UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

UNITED STATES OF AMERICA,

      Plaintiff,

v.                           Case No.  11-CR-10415-NMG

JAMES PRANGE,
STEVEN BERMAN,
RICHARD KRANITZ,
KAREN PERSON,
JOHN C. JORDAN,

      Defendants.

---

## RICHARD KRANITZ'S MOTION TO COMPEL DISCOVERY

FITZGERALD LAW FIRM, S.C.

Michael J. Fitzgerald
Wisconsin State Bar No. 1012693
Attorney for Defendant Richard Kranitz
Fitzgerald Law Firm, S.C.
526 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202
(414) 221-9600
(414) 221-0600 facsimile
mfitz@mfitzlaw.com

# TABLE OF CONTENTS

I.    BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   Facts of the case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.   Discovery issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.   THE GOVERNMENT SHOULD BE ORDERED TO SEEK
     OUT AND PRODUCE THE MATERIALS REQUESTED IN
     THIS MOTION FROM ALL ENTITIES AND AGENCIES
     THAT PARTICIPATED IN THE INVESTIGATION . . . . . . . . . . . . . . . . . . . . 4

III.  SPECIFIC REQUESTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A.   Cooperating witness benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    B.   E.H. offense conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    C.   E.H. expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    D.   Instructions to E.H. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    E.   E.H. phone toll and billing records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    F.   E.H. - government communications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    G.   FBI FD-209a forms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                  Case No.  11-CR-10415-NMG

JAMES PRANGE,
STEVEN BERMAN,
RICHARD KRANITZ,
KAREN PERSON,
JOHN C. JORDAN,

        Defendants.

## RICHARD KRANITZ'S MOTION TO COMPEL DISCOVERY

## I.    BACKGROUND

### A.    Facts of the case.

On January 11, 2012, the grand jury returned a superseding indictment charging the defendants with conspiracy to commit securities fraud, in violation of 18 U.S.C. §1349, wire fraud in violation of 18 U.S.C. §1343, §1349, and §2, and mail fraud in violation of 18 U.S.C. §1341, §1349, and §2.  The indictment also contains a criminal forfeiture provision.

The case involves a government sting operation conducted jointly by the FBI and the SEC.  Essentially, an FBI agent going by the name of John Kelly posed as a representative of a large hedge fund based in New York, Seafin Capitol.  "Mr. Kelly," on behalf of Seafin, wished to make equity investments in small, start-up companies in need of capital.

Four of the defendants were affiliated with such companies – Steve Berman and Richard Kranitz with China Wi-Max (a telecommunications company based in Wisconsin), Karen Person with Small Business Company, Inc. (a Delaware corporation operating in Nevada that assisted businesses in achieving growth), and John Jordan with Vida-Life International (a Nevada corporation in the business of developing and selling animal nutritional products).   All three companies can fairly be characterized as penny stock companies, and issued common stock publicly quoted in the OTC market commonly known as "Pink Sheets."  Superseding Indictment, p.1-3.

Mr. Prange is alleged by the government to have been in the business of assisting public companies in finding sources of funding.  Superseding Indictment, ¶2.

Through Prange, John Kelly met the other four defendants and discussed his willingness to make significant investments in their companies.   According to the indictment, however, Kelly insisted that he receive fifty percent of the investment as a kickback paid to a nominee consulting company operated by Kelly, and which was purportedly based in Boston.  Superseding Indictment, p.3-11.  Prange was to receive ten percent of the kickback for every company that he steered to Kelly.  Superseding Indictment, ¶20.

Assisting the FBI in the investigation was E.H., a cooperating witness.   As a government informant, E.H. recorded conversations with the defendants, and took part in recorded calls and meetings with "John Kelly" and the defendants.  E.H. generally vouched

for "Mr. Kelly" and helped to encourage the defendants to enter into the investment with Kelly and Seafin Capitol.

For the purpose of this motion, the basic allegations as to how the investigation proceeded, and how the transactions with each defendant occurred, are fairly set forth in the indictment.

### B.      Discovery issues.

All of the defendants have opted for automatic discovery under the local rules.  The discovery produced to date consists primarily of taped conversations with the defendants. E-mail correspondence by the defendants has been produced.  There are records available for review at the U.S. Attorney's Office. With some minor exceptions, no FBI-302's or witness statements have been produced.

Since the return of the superseding indictment, counsel for the defendants and the government have exchanged correspondence and had discussions in an effort to identify and resolve discovery issues.  As indicated in the joint status report filed on May 11, 2012, the parties have been unable to resolve all discovery issues and agreed that a motion to compel by the defendants is necessary.

Consistent with the local rules and the joint status report, counsel for the defendants have conferred and agreed on a coordinated effort to file their discovery motions.  Mr. Kranitz files this motion, and understands that the other four defendants join in it.  Similarly,

FITZGERALD LAW FIRM, S.C.

Mr. Kranitz joins in any motion to compel discovery filed by Mr. Berman, as do the other defendants.

## II.   THE GOVERNMENT SHOULD BE ORDERED TO SEEK OUT AND PRODUCE THE MATERIALS REQUESTED IN THIS MOTION FROM ALL ENTITIES AND AGENCIES THAT PARTICIPATED IN THE INVESTIGATION.

In making these requests, Mr. Kranitz requests that the government be ordered to produce materials and information in the possession, custody or control of all agencies of the United States that participated in the investigation, which was apparently referred to as "Operation Penny Pincher," and which led to the indictment and superseding indictment against the defendants, as was referenced in United States Attorney's Office press release titled, "Thirteen Charged in Connection With Securities Kickback Schemes," dated December 1, 2011. These agencies include but are not limited to the United States Attorney for the District of Massachusetts, the United States Attorney for the Southern District of Ohio, the United States Attorney for the Eastern District of Wisconsin, the United States Attorney for the District of Nevada, the Federal Bureau of Investigation, the Securities & Exchange Commission, and all Massachusetts, Wisconsin, Ohio, Nevada and other state and local law enforcement agencies and investigatory bodies that participated in the investigation.

The government has declined to produce materials for any entity or agency other than the United States Attorney's Office for the District of Massachusetts, and the FBI. *See,*

4

Letter from AUSA Sarah Walters and AUSA Vassili Thomadakis to Martin Murphy, 4/17/12, Doc. #39, p.1.

The government's view of the scope of its obligation to seek out discovery materials in this case is too narrow.  The Supreme Court has made it clear that "[t]he individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).  "It is well settled that if a member of the prosecution team has knowledge of *Brady* material, such knowledge is imputed to the prosecutors."  *Avila v. Quarterman*, 560 F.3d 299, 307 (5th Cir. 2009) (citations omitted); *see also Robinson v. Mills*, 592 F.3d 730, 735 (6th Cir. 2010) ("[I]n order to comply with *Brady*, the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf") (*citing Strickler v. Greene*, 527 U.S. 263, 281 (1999)).

This obligation is reflected in Department of Justice policy.  DOJ policy indicates that "[i]t is the obligation of federal prosecutors, in preparing for trial, to seek all exculpatory and impeachment information from all members of the prosecution team.  Members of the prosecution team include federal, state and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant."  David W. Ogden, Deputy Attorney General, Memorandum for Department Prosecutors, January 4, 2010.  Moreover, prosecutors are encouraged to "err on

FITZGERALD LAW FIRM, S.C.

the side of inclusiveness" when identifying members of the prosecution team for discovery purposes.  *Id*.

In *United States v. Safavian*, 233 F.R.D. 205 (D.D.C. 2006), for instance, the court ordered the government to discharge its Rule 16 and *Brady* obligations by searching the files of all agencies closely aligned with the prosecution in the case.  *Id*. at 206-07.  As the *Safavian* court noted:

> There simply is a need for the Justice Department to change the mindset of its trial prosecutors to assure that its approach to *Brady* is broad and open, 'consistent with the special role of the American prosecutor in the search for truth in criminal trials.'

*Id*. at 207, *citing Strickler v. Greene*, 527 U.S. 263, 301-02; *Berger v. United States*, 295 U.S. 78, 88 (1935) ("the interest of the Justice Department in a criminal prosecution is not that it shall win a case, but that justice shall be done").

Courts have found that the prosecution must produce *Brady* materials maintained by other components of the government which are "closely aligned with the prosecution." *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992) (citation omitted).  The "bureaucratic boundary" between government agencies is an insufficient basis to limit the duty to disclose.  *Id*.

In the context of Rule 16, the government must produce items within the government's "possession, custody or control" and which are material to preparation of the defense.  Fed. R. Crim. P. 16(a)(1)(E).  The intent of the rule is to allow the defendant the "widest possible opportunity" to receive such materials.  *United States v. Poindexter*, 727

F. Supp. 1470, 1473 (D.D.C. 1989).  In this regard courts have been more concerned with fairness to the defendant, and the government's ease of access to the materials, than with whether the items sought are actually within the physical possession of the prosecution.  *Id*. at 1477.

Thus numerous courts have ordered the government to produce materials from government entities beyond the prosecutor's office or the lead investigative agency in the case.  *See, e.g., United States v. Libby*, 429 F. Supp. 2d 1 (D.D.C. 2006) (documents in possession of Vice President and CIA); *United States v. Deutsch*, 475 F.2d 55 (5th Cir. 1973) (U.S. Postal Service personnel files), *overruled on other grounds, United States v. Henry*, 749 F.2d 203 (5th Cir. 1984); *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995) (BOP files of government witnesses); *United States v. W.R. Grace*, 401 F. Supp. 2d 1069, 1078-79 (D. Mont. 2005) (government agencies who were *not* part of the investigation but who provided files to the prosecution and allowed their employees to be interviewed); *United States v. Wilson*, 237 F.3d 827, 832 (7th Cir. 2001) (information known to U.S. Marshall's Service imputed to prosecutors).

In a relatively sophisticated sting operation such as this, involving participants from several states and federal districts, it is evident to the defense that government agencies or entities other than the Boston United States Attorney's Office and the FBI were involved. The most obvious is the SEC.

FITZGERALD LAW FIRM, S.C.

The coordinated efforts of the United States Attorney's Office and the SEC to obtain the instant charges is evident from their public statements about the case.

On December 1, 2011, the United States Attorney issued a press release announcing the indictment of thirteen individuals, including the five defendants in this case.  *See*, Thirteen Charged in Connection with Securities Kickback Schemes; SEC Issues Trading Suspensions.  The press release opens by stating:

> The U.S. Attorney for the District of Massachusetts, the Federal Bureau of Investigation and the US Securities & Exchange Commission today announced parallel cases filed in federal court against several corporate officers, lawyers and a stock promoter alleging they used kickbacks and other schemes to trigger investments in various thinly-traded stocks.

The release goes on to set forth the charges, which "follow a series of similar cases filed by the SEC in October, 2010 and June, 2011 in which more than a dozen companies and penny stock promoters were charged in similar kickback-for-investment schemes." *Id*.

Significantly, the head of the Boston office of the SEC, David Bergers, is quoted in the U.S. Attorney's press release as saying:

> We are committed to working with *our law enforcement partners here in Massachusetts*, and around the country, to stop abuses in the microcap sector and hold the perpetrators responsible.  Kickbacks and phony consulting agreements have no place in the financial strategies of any public company, and executives who engage in this kind of fraud are just selling out their own investors.

*Id*.  (emphasis added).

8                                    FITZGERALD LAW FIRM, S.C.

The SEC issued a virtually identical press release that same day. *See*, SEC, U.S. Attorney and FBI Announce 13 Charged in Connection with Securities Kickback Schemes.

In an article authored by Todd Wallack of the Boston Globe on December 1, 2011, and available online at www.boston.com, Mr. Bergers made the following additional comments about the case:

> David Bergers, Director of the SEC's Boston office, said it's important to thwart such kickback schemes – even involving small companies – because it can hurt investors. A tainted hedge fund investment could artificially drive up a firm's stock price, forcing other investors to pay more for shares or mislead them into thinking the company has more potential than it actually does. Although the stock price for these companies may be low, the damage can be very high.

In the same article, United States Attorney Carmen Ortiz "said the case was novel because FBI agents were able to partner with the SEC to use undercover tactics more common to drug and public corruption cases than securities." *Id.*

Thus, by their own admission, the prosecutors, FBI and SEC were partners in this investigation. If the prosecutors can jointly issue public statements about the case with their partners at the SEC, it is not unreasonable for them to seek out from the SEC the materials requested in this motion.

This is the most obvious example of other agencies or entities working on the case – and the defendant is aware of it only because of the public statements. The defendants request that the government be ordered to seek out and produce the materials requested in

this motion from all government agencies and entities that assisted in the investigation of this case.

## III.   SPECIFIC REQUESTS.

### A.   Cooperating witness benefits.

**Request**: All files, records and materials that reflect or relate to any promise, rewards, benefits or inducements, whether express or implied, including but not limited to payments of money, assistance with travel, employment, housing or other expenses, sentencing consideration, reduced or dismissed charges, consideration regarding forfeiture of assets, promises of confidentiality, and any verbal or written intercession with any law enforcement agency, prosecutor, judicial authority, or probation/parole officer, made to any cooperating witness whom the government intends to call at trial.

To date, the government has produced the following information regarding one cooperating witness, E.H.:

- Proffer letter dated May 26, 2011, from SEC Assistant Regional Director Silvestre Fontes;

- Proffer letter dated May 27, 2011, from AUSA Sarah Walters;

- Signed plea agreement with the US Attorney's Office for the District of Massachusetts;

- Criminal record of E.H. (none, other than his pending case);

Fitzgerald Law Firm, S.C.

- The case number of E.H.'s pending case in the District of Massachusetts.

**Government Position:**  In its April 17, 2012, letter to Mr. Murphy, the government indicated that it has produced "exactly what is contemplated by Local Rule 116.2(b)(1)(C)." Doc. #39, p.3, ¶B.8.  The government further indicates that it will produce materials governed by Local Rule 116.2(b)(2)(A) "twenty-one days before the trial date, as the Rule itself contemplates." *Id*.

**Argument:**  Local Rule 116.2(b)(2)(A) covers what can generally be referred to as bias, impeachment and/or *Giglio* evidence pertaining to government witnesses.  It should be noted that the rule indicates that such information shall be produced *not later* than twenty-one days before trial.  Nothing prevents the government from disclosing it sooner. If such evidence is known to the government now, there is no good reason that it should not be produced immediately.

As Judge Wolf noted in *United States v. Jones*, 620 F. Supp. 2d 163 (D. Mass. 2009), the District Court local rules in Massachusetts are in many respects a model for criminal discovery procedures, but "have not proved to be fully effective in preventing inadvertent errors by prosecutors that have been discovered in some cases." *Id*. at 170.  The best way to prevent inadvertent errors – and Judge Wolf lists several cases in which they have occurred, *id.* at 171 – is to encourage broad and early disclosure of *Brady* and *Giglio* information.

FITZGERALD LAW FIRM, S.C.

The net result is greater transparency, and fully prepared defense counsel who can adequately assess the government's case and either resolve it or test it in the adversary process.

This theme is reflected in the Ogden memo.  Deputy Attorney General Ogden encourages prosecutors to provide "broad and early" disclosure of *Brady* and *Giglio* material because it "often promotes the truth-seeking mission of the Department and fosters a speedy resolution of many cases.  It also provides a margin of error in case the prosecutor's good-faith determination of the scope of appropriate discovery is in error."  Memorandum for Department Prosecutors, *supra*, at p.3; *see also, United States v. Anderson*, 416 F. Supp. 2d 110, 115 (D.D.C. 2006) (early disclosure of Rule 16 materials is in interest of both government and defense as it allows defendant to prepare a defense, and/or engage in meaningful plea discussions).

Accordingly, the defendant requests that the government be ordered to immediately produce all *Brady* and *Giglio* material currently in its possession, and make continuing disclosures upon receipt of additional material.

**B.     E.H. offense conduct.**

**Request**: A summary of E.H.'s offense conduct that the government submitted to the Probation Department.

FITZGERALD LAW FIRM, S.C.

**Government Position:**  The government's position is that it will produce these materials twenty-one days before trial, consistent with Local Rule 116.2(b)(2)(A).  Doc. #39, p.3, ¶B.10.

**Argument:**  For the reasons stated in III(A) above, the defendant requests that the government be ordered to produce this material immediately.  Early disclosure will allow the defendant adequate time to investigate E.H.'s illegal conduct which could bear upon his credibility.

### C.    E.H. expenses.

**Request**: All records concerning funds provided to and/or expended by E.H. or any cooperating witness in connection with the investigation, including but not limited to travel records, hotel records, and receipts for meals or other travel expenses.

**Government Position:**  The government's position with respect to this request is that such materials will be provided twenty-one days before trial, pursuant to Local Rule 116.2(b)(2)(A).  Doc. #39, p.3, ¶B.11.

**Argument:**  Payments to and/or on behalf of a government witness clearly fall within *Brady* and *Giglio*, and are relevant on cross-examination to witness bias.  *See, e.g., Banks v. Dretke*, 540 U.S. 668 (2004) (witness's paid informant status); *United States v. Leja*, 568 F.2d 493 (6th Cir. 1977) (reversible error to deny cross-examination on payments to witness as informant in other cases); *United States v. Edwardo-Franco*, 885 F.2d 1002 (2d Cir.

13

1989) (evidence of payments to handwriting expert from government for past services highly relevant to bias).

The government does not appear to disagree with its obligation to produce these materials, only to the timing of disclosure.

It is clear that the government has been working with E.H. for over one year (his proffer letter is dated May 26, 2011) and currently possess the requested information.  There is no good reason to allow the government to delay disclosure until only twenty-one days before trial, other than to give the government a tactical advantage that it does not need.

Among other things, the expense records will allow the defendant to conduct independent investigation into E.H.'s conduct, a task that should be well under way – if not completed – twenty-one days before trial.

For the reasons stated in III(A), the Court should grant this request and order immediate disclosure of the E.H. expense reimbursement information.

**D.     Instructions to E.H.**

**Request**: All briefing materials, guidance, directions, or other related materials that any government agent or attorney gave to, or advised E.H. of, in connection with the investigation in this case.  This request includes any other cooperating witness.

**Government Position:**  The government objects to this request:

> This request is vague, overbroad, and beyond the scope of discovery contemplated by Rule 16 and Local Rule 116.2.  To the extent that this request seeks statements of a testifying witness pursuant to Federal Rule of Criminal Procedure 26.2

Fitzgerald Law Firm, S.C.

and 18 U.S.C. §3500, we will provide such statements in the timeframe contemplated by the Rule, and in accordance with our Office's general practice.

Doc. #39, p.3, ¶B.12.

**Argument:**  Other than taped conversations and e-mails with the defendants, the defendants have been provided with no information documenting E.H.'s activities during the course of the investigation.  The defendant has been provided with no statements made by E.H. to any government agent or prosecutor, or they to him.  The defendant has been provided with no information documenting whether E.H. complied or failed to comply with any directives and rules of the undercover operation in which he participated.

The defendant's request in this regard is for any agreements, instructions, directives or similar information provided to E.H. by any agent or prosecutor.  This information is potentially helpful to the defense in two respects.

First, the rules that an informant was instructed to follow in an undercover investigation have obvious impeachment value if those rules were violated.

Second, in a government sting operation such as this, entrapment is a possible defense.  In an entrapment case, the conduct of the government, and the manner in which the investigation was initiated and conducted, is one of the two main issues for the jury to determine at trial (the other being predisposition of the defendant).  *See, e.g., Mathews v. United States*, 485 U.S. 58, 63 (1988).

Fitzgerald Law Firm, S.C.

The rules and directions as to how E.H. should conduct himself, what he was authorized to say, and what he could do with or without prior approval by the agents is relevant to the first prong of an entrapment defense, focusing on government inducement.

Such evidence could establish that the agents authorized E.H. to entrap the defendants, or that E.H. exceeded his authority – the latter being relevant to his credibility.

It is important to note that it was E.H., not the agent, who first reached out to the defendants and engaged them in conversations about "Mr. Kelly" and Kelly's willingness to make a substantial investment in their companies.  It was E.H. who initially explained Kelly's requirement of a 50% "commission" or "kickback" as a requirement of the investment.  In one recorded meeting in Boston between E.H., "Mr. Kelly," Mr. Berman and Mr. Prange, Kelly encouraged Berman and Prange to contact E.H. with any future comments, questions or concerns about the investment.

In another crucial taped call – one of only two in which Mr. Kranitz appears – Kelly did not even participate and the *entire* explanation of the Seafin investment in China Wi-Max came from E.H.

The agents' instructions to E.H. about how he should accomplish the goals of the investigation, the lengths that he should go to in order to convince the defendants to participate in the investment, and other rules confining his conduct are relevant to both his credibility, and to the government's conduct in the investigation.  Again, if such materials exist, they clearly are in the possession of the government now and there is no good reason

Fitzgerald Law Firm, S.C.

to delay disclosure.  Pursuant to *Brady* and *Giglio*, the Court should order the government to produce these materials immediately.

### E.    **E.H. phone toll and billing records**.

**Request**: All phone toll and billing records, for the period from June 1, 2011 to October 31, 2011, for any telephone used by any agent, or cooperating witness in connection with the investigation, to communicate with each other or with any defendant.

> **Government Position:**  The government objects to this request:
>
> > It is not clear to us under what Rule you would be entitled to, for instance, billing records of telephones used by agents to communicate with each other.  To the extent you are seeking billing records reflecting telephone calls placed by the CW that relate to the charges in the Superseding Indictment, we do not currently have such records.  If we do receive the records, we anticipate producing redacted copies of the same.  The remainder of the request is vague, overbroad, and beyond the scope of discovery contemplated by Rule 16 and Local Rule 116.2.

Doc. #39, p.4, ¶B.14.

**Argument:**  The requested records are needed by the defendant to prove the extent of the undercover operation.  The requested records, of course, will only show that a call was made and, perhaps, the duration of the call.  This evidence is material and helpful to the defense in several respects.

First, phone contacts between the agents and E.H. are relevant to establish the extent of their relationship with him, which is relevant to his bias (and perhaps the agents' credibility as well if, for example, it is shown that they relied heavily on E.H. to assist them).

<span style="float:right">Fitzgerald Law Firm, S.C.</span>

Second, the phone records will help establish the origin and progression of the investigation as it was directed at the defendants.  The number of times that the agents contacted each other and E.H., the length of those contacts, and the timing of those contacts is relevant to an entrapment defense.

Third, the phone records will establish undocumented contacts between the agents, undocumented contacts between the agents and E.H., and undocumented and/or unrecorded contacts between E.H. and/or the agents, and any of the defendants – that is, contacts not reduced to a written report or documented in a recorded call or meeting.

In the context of proving the nature of the government investigation in an entrapment defense, these unrecorded and undocumented contacts are just as important as those that were documented.  Moreover, the failure to document contacts by the agents with E.H., or by the agents and/or E.H. with the defendants, is directly relevant to their credibility.

It should be noted that, in a related "Operation Penny Pincher" case in this district, the defendant in *United States v. Muhammad Shaheed*, case no. 12-10014-DPW, made an identical discovery request for cooperating witness and agent phone toll and billing records. *See* letter from Attorney James Krasnoo to AUSA Vassili Thomadakis, May 29, 2012, Doc. #21, ¶18.  Mr. Thomadakis responded by agreeing to produce "billing records reflecting telephone calls placed by or to a witness that relate to the charges in the Indictment."  *See* letter from AUSA Thomadakis to Mr. Krasnoo, June 12, 2012, Doc. #24, ¶18.  Mr. Thomadakis indicated that the government objects to the balance of the request as "vague,

Fitzgerald Law Firm, S.C.

overbroad and beyond the scope of discovery contemplated by Rule 16 and Local Rule 116.2." *Id*.

For these reasons, the government should be ordered to immediately produce the requested phone toll and billing records.  At a minimum, records similar to those the government agreed to produce in *Shaheed* should be produced here.

### F.    E.H. - government communications.

**Request**: All e-mails, text messages, letters, notes, memoranda or documentation of any kind reflecting or relating to any correspondence or communication between E.H., any attorney for E.H., and any government agent or lawyer involved in the investigation and prosecution of this case, from June, 2011 to the present.

This request consolidates requests made by Mr. Murphy at paragraphs B.9 and B.12 of his April 3, 2012 letter to the government.  Doc. #36.

**Government Position:**  With respect to correspondence between E.H., his attorney and the government concerning proffers and plea negotiations (Murphy letter, Doc. #36, ¶B.9), the government objects to disclosure because "items sought beyond the agreements already produced are beyond the scope of discovery contemplated by Rule 16 and Local Rule 116.2." Doc. #39, p.3, ¶B.9.  The government objects to disclosure of communications between E.H. and the government agents and/or lawyers on the following grounds:

> This request is vague, overbroad, and beyond the scope of
> discovery contemplated by Rule 16 and Local Rule 116.2.  To
> the extent that this request seeks statements of a testifying
> witness pursuant to Federal Rule of Criminal Procedure 26.2

and 18 U.S.C. §3500, we will produce such statements in the timeframe contemplated by that Rule, and in accordance with our Office's general practice.

Doc. #39, p.3, ¶B.12.

**Argument:**  The time frame contemplated by Fed. R. Crim. P. 26.2 and 18 U.S.C. §3500 is after the witness testifies on direct examination.  Rigid application of the rule is not conducive to effective preparation nor an efficient (much less fair) trial, and most courts and prosecutors recognize that.

So far as Mr. Kranitz can tell, the Local Rules are silent on the timing of disclosure of *Jencks* material.  The government offers to produce it "in accordance with our Office's general practice," but Mr. Kranitz has no idea what that is.  The undersigned counsel has inquired of the prosecutors as to what the practice will be in this case, without a definite response.

One of the issues is again timing, and for the reasons already set forth in this memorandum, the Court should order immediate disclosure of the requested communications to allow for effective preparation.

Like everyone else, it is obvious that government agents, cooperating witnesses, their lawyers and government lawyers are communicating by text and e-mail.  As an example, the disclosure of text messages between a cooperating witness and government agents recently derailed a Foreign Corrupt Practices Act sting operation case that went to trial in the District of Columbia.  *See United States v. Goncalves, et al.*, case no. 09-CR-335 (D.D.C.).

Fitzgerald Law Firm, S.C.

In commenting on numerous off-color and inappropriate text messages between the cooperating witness and the agents in that case, the jury foreperson indicated that the communications damaged the credibility of the government witnesses.  He further indicated that the text messages established that the sting operation was "poorly run and conceived."  *See* Racy, Vulgar Texts Hurt Justice Department's Largest Sting Operation Targeting Foreign Bribery, Washington Post, February 13, 2012, available online at www.washingtonpost.com.

Perhaps that case was an outlier, but the fundamental concept is that the defendant is entitled to show witness bias and credibility through such communications.  Witness bias – whether a lay witness or a government agent – is always relevant and always a fair subject for cross-examination.  *United States v. Abel*, 469 U.S. 45, 55-56 (1984).

An instructive case in this regard is *United States v. W.R. Grace, et al.*, Case No. CR-05-07, a criminal environmental prosecution brought in the District Court of Montana.  The key government witness there was a former W.R. Grace employee, Robert Locke.  The defense aggressively cross-examined Locke on his credibility in general, and his bias in favor of the government and against W.R. Grace in particular.

In the middle of trial, and upon the motion of the defense, the trial court found "clear and admitted violations of Fed. R. Crim. P. 16, 18 U.S.C. §3500, and *Brady* and *Giglio*," Order, 4/28/09, at p.6, based on the government's failure to turn over all e-mails between

Fitzgerald Law Firm, S.C.

an EPA agent and Locke.  In finding the discovery violation, the trial judge stated as follows:

> Locke's e-mail exchanges with Special Agent Marsden, his
> immunity negotiations with the government, and Marsden's
> notes as to those negotiations and other matters show Locke's
> animus toward the Defendants and the *extent of his relationship*
> *with the prosecution.  They are evidence of the bias of the*
> *prosecution's star witness, which is clearly a fertile area for*
> *cross-examination*.  The documents should have been disclosed,
> and the government's failure to timely disclose denied the
> Defendants the opportunity to conduct thorough and more
> effective cross-examination.

Order, p. 6 (emphasis added).

These cases illustrate that text and e-mail communications between agents and cooperating witnesses can be crucial to the defense in testing witness credibility.  Such communications, conducted in "real time," pull back the curtain on the true nature of the agent-witness relationship, in sharp contrast to the often sanitized version that appears in an agent report.

Under *Giglio*, impeachment evidence, including promises of leniency to government witnesses, *United States v. Austin*, 103 F.3d 606, 609 (7th Cir. 1997), plea agreements or negotiations with respect to criminal charges against the witnesses, *Lindh v. Murphy*, 96 F.3d 856, 860 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320 (1997); *Braun v. Powell*, 227 F.3d 908, 920 (7th Cir. 2000), and testimony in exchange for government favors, *United States v. Boyd*, 55 F.3d 239, 245-46 (7th Cir. 1995), are considered evidence that undermines the credibility of the witness and must be disclosed.

FITZGERALD LAW FIRM, S.C.

Disclosure is required regardless of whether the negotiations and communications are made to a cooperating witness or to the witness's lawyer. *Hayes v. Brown*, 399 F.3d 972 (9th Cir. 2005) (*en banc*) (due process violated when cooperating witness testified falsely about oral agreement reached between witness's counsel and government, even though witness was unaware of agreement); *Spicer v. Roxbury Correctional Institute*, 194 F.3d 547, 556 (4th Cir. 1999) (government violated due process by failing to disclose witness's factual proffer, which was communicated by the witness's attorney to the prosecutor).

In *United States v. Sudikof*, 36 F. Supp. 2d 1196 (C.D. Cal. 1999), for example, the court ordered the government to produce "all notes or other evidence of any communication between the government and [a cooperating witness] or his counsel – including materials relating to 'proffer sessions' that occurred well before the date of the first FBI 302 for [the witness]." *Id.* at 1197 (quotation omitted). Because the proffers "might reasonably be considered favorable to the defendant's case," *id.* at 1199, and were "admissible evidence" or "likely to lead to admissible evidence," *id.* at 1200, both *Brady* and *Giglio* required that the proffers, as well as information concerning the negotiations that led to the witness's cooperation be disclosed:

> The Court finds that any information that reveals any variations in the proffered testimony of an accomplice witness testifying pursuant to a leniency agreement is relevant to the witness's credibility and therefore must be disclosed under *Brady*. *In addition, any information that reveals the nature of the negotiation process that led to the leniency agreement is*

FITZGERALD LAW FIRM, S.C.

> relevant to the witness's motives to testify and must be disclosed
> under *Giglio*.

*Id.* at 1204 (emphasis added).

In *Spicer v. Roxbury*, *supra*, the court held that the government violated *Brady* by failing to disclose to the defense a witness's factual proffer, communicated by the witness's attorney to the prosecutor, which reflected a version of the witness's testimony significantly less damaging to the defendant than the witness's testimony at trial.  The fact that the communication was made by the attorney to the prosecutor was immaterial: "For purposes of determining whether evidence is favorable to the defendant, it is the content of the statements, not their mode of communication to the state, that is important."  *Spicer v. Roxbury*, 194 F.3d at 556.

The communications requested here are *Brady*/*Giglio* material, and fall within Fed. R. Crim. P. 26.2 and 18 U.S.C. §3500.  They are essential for the defendant to challenge the credibility of the government agents and the cooperating witness.  They are needed to establish the manner in which the government conducted the investigation with respect to an entrapment defense.

For these reasons, the Court should order immediate production of the communications outlined in this request.

### G.     FBI FD-209a forms.

**Request:** All FBI FD-209a forms documenting contacts with E.H. during the course of the investigation.

Fitzgerald Law Firm, S.C.

**Government position**: The undersigned counsel only recently learned of the existence of such a document in conducting research for this motion.  It was not requested by Mr. Murphy in his discovery letter to the government, and thus the defendant does not know the government's position on this request.

**Argument**: Apparently, the FBI maintains a "Confidential Human Source Contact Report" documenting agent contacts with a cooperating individual in the course of an investigation.  The form is known as FD-209a.

Because the form documents dates and times of contacts between the agents and the cooperating individual, and appears to summarize the nature of the contacts, it is relevant to an entrapment defense and witness bias, and should be produced for the same reasons that communications with E.H., and the phone toll records, are relevant and should be produced – as noted in sections E and F above.

## IV.    CONCLUSION.

Mr. Kranitz brings this motion because he is entitled to the requested materials in order to effectively evaluate the government's case, investigate and prepare a defense, and challenge the credibility of important government witnesses at trial.

Most if not all of the requested materials currently exist and are within the possession, custody or control of the government.  There is no good reason to allow the government to delay production of *Brady* and *Giglio* material, witness statements, and Rule 16 materials

Fitzgerald Law Firm, S.C.

encompassed in this request – other than to give the government a tactical advantage that it does not need.

Nor should the government be allowed to narrowly circumscribe the scope of where it will seek out the requested materials. Production should be ordered from all government agencies and entities that participated in the investigation.

As Judge Walton noted in the Lewis Libby prosecution, "[c]riminal discovery is not a game. It is integral to the quest for truth and the fair adjudication of guilt or innocence." *United States v. Libby*, 429 F. Supp. 1, 4 (D.D.C. 2006), *quoting Taylor v. Illinois*, 484 U.S. 400, 419 (1988) (Brennan, J., dissenting). This theme underlies Deputy Attorney General Ogden's Memorandum for Department Prosecutors, as well as Judge Wolf's comprehensive review of discovery practices in this district in *United States v. Jones*, *supra*. It is the most important reason that Mr. Kranitz is entitled to the material that he now seeks.

For the reasons stated, Mr. Kranitz respectfully requests that his motion to compel discovery be granted.

Fitzgerald Law Firm, S.C.

Dated at Milwaukee, Wisconsin this 22nd day of June, 2012.

Respectfully submitted,

FITZGERALD LAW FIRM, S.C.

  s/Michael J. Fitzgerald
Wisconsin State Bar No. 1012693
Attorney for Defendant Richard Kranitz
Fitzgerald Law Firm, S.C.
526 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202
(414) 221-9600
(414) 221-0600 facsimile
mfitz@mfitzlaw.com